UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONJUARELL YOWELL,

    Plaintiff,

v.

CASE NO. 2:13-CV-10029
JUDGE SEAN F. COX
MAGISTRATE JUDGE PAUL J. KOMIVES

VINDHYA JAYAWARDENA, M.D.,

    Defendant.

                             /

**REPORT AND RECOMMENDATION ON DEFENDANT JAYAWARDENA'S
MOTION TO DISMISS (docket #23)**

I.    RECOMMENDATION: The Court should grant defendant Jayawardena's motion to dismiss.

II.    REPORT:

A.    *Background*

Plaintiff Donjuarell Yowell is a state prisoner who, at the time relevant to this action, was incarcerated at the Ryan Road Correctional Facility in Detroit, Michigan. On January 3, 2013, plaintiff commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Defendant is Dr. Vindhya Jayawardena, a contract doctor at the Ryan facility. Plaintiff's claims relate to the treatment received from defendant for a gel sleeve used for his prosthetic leg as well as treatment recommended for his possible prostate cancer. Plaintiff alleges that defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Plaintiff alleges that on May 9, 2012, as a result of his prosthetic leg, the gel sleeve used to keep the leg in place needed replacing. He claims he repeatedly notified health care, yet received no response. With respect to defendant, Dr. Vindhya Jayawardena, plaintiff alleges the following:

1

"I was thereafter seen by defendant Doctor Jayawardena concerning my need for the gel sleeve, and because my 'PSA'(Prostate Specific Antigens) [were] seriously high. Dr. Jayawardena recommended the gel sleeve, and did a digital rectal examination (DRE) of my prostate. Dr. Jayawardena clearly knew of my prosthesis and prostate issues." *Compl.,* ¶ 5. Before the sleeve was issued, plaintiff's prosthetic leg and socket broke. As a result, he was forced to use his back up leg. The back up leg caused marked swelling and bleeding of his stump. Health care provided crutches, treated the bleeding, and scheduled daily cleaning and dressing of his stump.

Plaintiff alleges that he sent multiple letters to the warden seeking timely and necessary medical care at an off-site hospital. He continually went weeks without treatment and alleges he repeatedly asked prison health care for necessary medical care and did not receive a response or any result. Plaintiff alleges the untimely treatment cost him "undue pain and suffering." *Id.,* ¶ 12. In September, plaintiff had a prostate examination, which resulted in a recommendation for a prostate biopsy. Prison health care workers stated that he would receive an off-site hospital appointment, but plaintiff alleges that appointment never came. *Id.*, ¶¶ 13-14.

Ryan Road Correctional Facility began to transition to a Parole Violations Facility and all prisoners would be transferred by mid-October 2012. Plaintiff asked not have his transfer delayed due to his "debilitated state." *Id.*, ¶ 19. Plaintiff contends his leg continued to swell and bleed, yet the health unit manager did not order the gel sleeve until plaintiff was transferred on October 16, 2012. Plaintiff contends he was transferred to Oaks Correctional Facility instead of Muskegon Correctional Facility, where most Ryan prisoners were being sent, as a result of retaliatory reasons. He alleges that various other defendants violated his constitutional rights by not transferring him to a facility with reasonably accessible medical care. He claims defendants knew that he would be

2

subjected to abject conditions and placed in a worse prison than previous. Plaintiff alleges he was put in segregation at Oaks and segregation staff had no medical detail because he was simply listed as a visitor. He alleges he was particularly prone to Methicillan-Resistant Staphylococcus Aureus (MRSA), which further endangered his health. Plaintiff asserts that defendants failed to adequately supervise their subordinates and to properly provide him medical care by transferring plaintiff to Oaks Correctional Facility. He asserts that the retaliatory transfer resulted in a serious delay of his medical care.

The matter is currently before the Court on defendant Jayawardena's motion to dismiss, filed on March 28, 2013. Defendant argues that plaintiff's complaint fails to state a claim upon which relief can be granted against her for deliberate indifference to plaintiff's serious medical needs. Plaintiff filed a response to the motion on June 28, 2013.

B.    *Legal Standards*

   1.    *Rule 12(b)(6) Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided for in FED. R. CIV. P. 12(b)(6). In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim. *Id*. at 47. Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47. However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual

allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
> 
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*., at 557 (brackets omitted).
> 
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
> 
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (parallel citations omitted).

A court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).

      2.     *Eighth Amendment Medical Care Claims*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *See Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also,*

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103). The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see*

*Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id*. at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

C. *Analysis*

There is no question that plaintiff's prosthetic leg, prostate problems, and the related symptoms constitute a serious medical need. Thus, the only question is whether plaintiff has sufficiently alleged a claim with respect to whether defendant was deliberately indifferent to that need. The Court should conclude that he has not.

Plaintiff's sole claim against defendant Jayawardena is that she was deliberately indifferent for failing to give him the medical treatment that he wanted. With respect to this claim, plaintiff's allegations are insufficient to establish a claim that Jayawardena was deliberately indifferent that is plausible on its face. As plaintiff's allegations make clear, defendant Jayawardena saw him on one occasion, gave him a digital-rectal prostate examination, and made a referral for a gel sleeve for the prosthetic limb. Plaintiff does not allege any other action by Dr. Jayawardena. Thus, plaintiff's allegations establish nothing more than Dr. Jayawardena made a medical judgment, based on the evidence available to her, that plaintiff needed a new gel sleeve for the prosthetic limb and never saw the plaintiff again. Even if this judgment was wrong or negligent, it does not establish Dr. Jayawardena's deliberate indifference.

As the Supreme Court made clear in *Estelle*, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "[A]n inadvertent failure to provide adequate medical care (such as medical malpractice) cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 107. In the medical context, therefore, mere negligence, or even gross negligence, is insufficient to establish an Eighth Amendment violation. "Where a prisoner has

received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860-61 n.5 (6th Cir. 1976). Thus, allegations of "an inadvertent failure to provide medical care . . . [or of] negligen[ce] in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 105-06; *see also*, *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. Aug. 4, 1999) (en banc).

Plaintiff alleges that Dr. Jayawardena knew of his prosthetic device and recommended he get a new gel sleeve. He then alleged difficulty with the leg as a result of not receiving a new gel sleeve and tried to schedule an off-site hospital appointment. Plaintiff does not allege however that Dr. Jayawardena had any further role in his treatment or the procurement of the sleeve. She simply made her recommendation the one and only time she saw him and did not have any further interactions with plaintiff. Plaintiff alleges he contacted other defendants but not Dr. Jayawardena. Furthermore, although plaintiff alleges other difficulties regarding a prostate problem, Dr. Jayawardena properly did a prostate exam upon her examination. According to plaintiff's complaint, he does not allege that Dr. Jayawardena was aware of any further issues regarding his prostate nor was she involved in any additional care or scheduling of care regarding plaintiff's prostate issues. Just as a plaintiff's disagreement with a prison doctor's chosen course of treatment does not establish deliberate indifference, "[a] difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs." *Acosta v. Naphcare*, No.2:09-cv-1998, 2010 WL 3522356, at \*5 (D. Nev. Sept. 2, 2010) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *see also*, *Douglas v. Stanwick*, 93

F. Supp. 2d 320, 325 (W.D.N.Y. 2000); *Brewer v. Blackwell*, 836 F. Supp. 631, 644 (S.D. Iowa 1993).

Further, plaintiff cannot establish deliberate indifference to any of his serious medical needs. Dr. Jayawardena saw plaintiff once and made the proper referral for a gel sleeve for his prosthetic leg. Plaintiff does not allege any other action by the defendant. Such a record does not demonstrate deliberate indifference by the defendant. *See Westlake*, 537 F.2d at 860 n.5. Because Dr. Jayawardena saw him on only one occasion and he was subsequently transferred to another prison, this action does not rise to the level of deliberate indifference.[1]

D.   *Conclusion*

For the foregoing reasons, plaintiff's complaint fails allege sufficient facts to state a deliberate indifference claim against defendant Jayawardena that is plausible on its face. Accordingly, the Court should grant defendant Jayawardena's motion to dismiss. This recommendation does not affect the viability of plaintiff's claims against the remaining defendants.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party

---

[1]Because plaintiff's complaint fails to state a claim against defendant Jayawardena, the Court need not consider her alternative argument that plaintiff's claim is unexhausted. *See* 42 § 1997e (c)(2)

might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 24, 2013             s/ Paul J. Komives
                                 PAUL J. KOMIVES
                                 UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 24, 2013, electronically and/or by U.S. mail.

                                 s/Michael Williams
                                 Relief Case Manager for the
                                 Honorable Paul J. Komives