UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONJUARELL YOWELL,

    Plaintiff,

v.

    CASE NO. 2:13-CV-10029
    JUDGE SEAN F. COX
    MAGISTRATE JUDGE PAUL KOMIVES

RAYMOND BOOKER, et al.,

    Defendants.
                               /

**REPORT AND RECOMMENDATION ON: (1) MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (docket #38); and (2) DEFENDANT CAMPBELL'S MOTION TO DISMISS (docket #52)**

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    *MDOC Defendants' Motion for Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    C.    *Defendant Campbell's Motion to Dismiss* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
            a. Exhaustion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
            b. Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

\*    \*    \*    \*    \*

I.    RECOMMENDATION: The Court should deny the MDOC defendants' motion for summary judgment, but should grant defendant Campbell's motion to dismiss. The Court should also dismiss plaintiff's claims against defendant Gause, based on plaintiff's concession that his claims against her are not exhausted.

II.    REPORT:

A.    *Procedural Background*

Plaintiff Donjuarell Yowell is a state prisoner who, at the times relevant to this action, was incarcerated at the Ryan Road Correctional Facility in Detroit, Michigan. On January 3, 2013, plaintiff commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Named as defendants are Warden Raymond Booker, Deputy Warden Willis Chapman, Dr. Vindhya Jayawardena, Assistant Health Unit Manager Annette Simon, Physician's Assistant (P.A.) Campbell, and Transfer Coordinator Cynthia Gause.[1] Plaintiff's claims related to the treatment he received for a gel sleeve used for his prosthetic leg, as well as treatment for possible prostate cancer. Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

More specifically, plaintiff alleges that the sleeve needed to be replaced on May 9, 2012. He repeatedly notified health care of this need, but received no response. He wrote to defendants Booker and Chapman, and grieved the issue. On June 13, 2012, defendant Simon responded to the grievance by stating that this issue was resolved, approval for the gel sleeve having been faxed to Duane Waters Hospital on June 11. *See* Compl., ¶¶ 2-4. Around this time, he was seen by defendant Jayawardena, who recommended the gel sleeve and performed a digital rectal examination based on plaintiff's high PSA (Prostate Specific Antigens). *See id.*, ¶ 5. Petitioner's prosthetic leg socket began to crumble, which combined with the worn out gel sleeve required him to use his old prosthetic leg. This leg caused swelling and bleeding of his stump. Health Care treated the bleeding and provided him crutches on June 24, 2012. *See id.*, ¶¶ 6-8. Plaintiff again wrote to defendant Booker; defendant Simon responded to his letter on July 2, indicating that she had spoken to

---

[1] P.A. Campbell was initially identified as P.A. Palmer. After plaintiff correctly identified P.A. Campbell as the proper defendant, he was granted leave to amend his complaint to add Campbell as a defendant, and Campbell has now been served. The Court has previously granted defendant Jayawardena's motion to dismiss.

2

defendant Campbell, that approval for the gel sleeve had been faxed to Duane Waters Hospital, and that the hospital would inform him when an appointment had been scheduled. *See id*., ¶¶ 9-10. He attended a hospital off-site visit, at which servicer Joe Hunter indicated he would repair the prosthetic leg. However, weeks passed with no resolution, during which time plaintiff continued to complain to Health Care and defendant Chapman. *See id*., ¶¶ 11-12.

In September, defendant Campbell arranged for prostate testing at the Detroit Medical Center, based on plaintiff's continued prostate problems. The doctor conducting the testing recommended a prostate biopsy. Defendants Simon and Campbell told plaintiff that a biopsy would be done "within weeks." A biopsy was done in late September. *See id*., ¶¶ 13-14, 16. In early October, plaintiff was seen by Nurse Ramsey. As a result of this examination, it was discovered that the order submitted by defendant Campbell for the gel sleeve was incorrectly filed out, and thus the order was never filled. On October 12, 2012, defendant Simon informed plaintiff that she had spoken with defendant Campbell, and that the correct order would be placed. Defendant Simon placed the order on October 16, 2012. *See id*., ¶¶ 17-18, 20. Meanwhile, the Ryan Road facility was transitioning to a facility only for parole violators, and would be closed as a general prison in October. On October 8, plaintiff wrote to defendant Chapman, asking that his transfer be delayed while he waited for his treatment. Defendant Chapman did not respond, but by that time he had already signed the order transferring plaintiff to the Oaks Correctional Facility. *See id*., ¶¶ 15, 20. Plaintiff alleges that defendants transferred him to the Oaks facility, rather than another facility, in retaliation for his complaints regarding his medical care, and that defendants knew it would be more difficult for him to receive medical care at the Oaks facility. *See id*., ¶¶ 21-25. Although not entirely clear, it appears from plaintiff's complaint that subsequent to his transfer he in fact received

a repaired prosthetic and a new gel sleeve, was told that he had prostate cancer, and received treatment for that cancer.[2]

The matter is currently before the Court on the August 14, 2013, motion for summary judgment filed by defendants Booker, Gause, Chapman, and Simon (collectively the "MDOC defendants"). The MDOC defendants contend that they are entitled to summary judgment because plaintiff failed to properly exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). Plaintiff filed a response to this motion on October 3, 2013, the MDOC defendants filed a reply on October 14, 2013, and plaintiff filed a surreply on October 25, 2013. On February 24, 2014, plaintiff, now through proceeding through counsel,[3] filed an amended response to the MDOC defendants' motion. In this response, plaintiff concedes that his claims against defendant Gause are not exhausted. Also pending is defendant Campbell's motion to dismiss, filed on December 16, 2013. Defendant Campbell likewise moves to dismiss on the ground that plaintiff failed to exhaust his administrative remedies. Further, defendant Campbell argues that plaintiff's complaint fails to state a claim for deliberate indifference to plaintiff's medical needs against defendant Campbell. Plaintiff, through counsel, filed a response to defendant Campbell's motion on February 18, 2014. For the reasons that follow, the Court should deny the MDOC defendants' motion for summary judgment, and should grant defendant Campbell's motion to dismiss.

B.   *MDOC Defendants' Motion for Summary Judgment*

   1.   *Legal Standard*

---

[2]Plaintiff's complaint contains numerous allegations regarding the care he received following his transfer. These allegations all relate to MDOC officials or health care providers who are not named as defendants.

[3]On January 22, 2014, Jonathan Marlin was assigned as *pro bono* counsel for plaintiff.

4

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also*, FED. R. CIV. P. 56(c)(1) (moving party may meet its burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

5

*Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).  To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

    2.    *Analysis*

The MDOC defendants argue that they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).  The Court should conclude that defendants have failed to demonstrate that they are entitled to summary judgment on this basis.

Pursuant to the Prison Litigation Reform Act (PLRA), inmates challenging their conditions of confinement must exhaust their administrative remedies before pursuing a federal civil rights action.  Specifically, the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust a civil rights claim, a prisoner must comply with the prison system's "procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). As the Supreme Court recently explained, the scope of a prisoner's obligation to exhaust is defined not by the PLRA itself, but by the prison's grievance procedures:

> [T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones v. Bock*, 549 U.S. 199, 218 (2007) (citations omitted). Michigan provides for a three-step grievance procedure. A Step I grievance is directed to the Step I Grievance Coordinator at the facility in which the prisoner is incarcerated. If the prisoner is dissatisfied with the Step I response, he may file a Step II appeal to the Warden of the facility. If the prisoner is again dissatisfied with the Step II response, he may file a Step III appeal to the Director of the Department of Corrections or his designee. *See* MICH. DEP'T OF CORRECTIONS POLICY DIRECTIVE 3.02.130(V), (BB), (FF) (effective July 9, 2007). The Policy Directive provides that a prisoner must include "the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id*., § (R).

Defendants argue that the only grievance plaintiff pursued through Step III of the grievance process was not completed until after plaintiff filed his complaint in this case. As defendants correctly note, this grievance cannot satisfy the exhaustion requirement, because the grievance

process had not been completed at the time plaintiff filed suit. Because § 1997e(a) provides that "[n]o action shall be brought" until exhaustion is completed, the Sixth Circuit has held that this "plain language of the statute makes exhaustion a precondition to filing an action in federal court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *see also*, *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005).

However, plaintiff filed at least three grievances relating to his medical care while incarcerated at the Ryan Road facility: Grievance Nos. RRF-2012-10-0666-12Z ("0666 grievance"); RRF-2012-10-0758-12Z ("0758 grievance"); and ECF-2012-10-3378-12Z ("3378 grievance"). *See* Pl.'s Resp. to Def. Campbell's Mot. to Dismiss, Ex. C. Defendants argue that these grievances do not constitute proper exhaustion, because they were not pursued through each of the three steps of the MDOC grievance process. The Court should reject this argument.[4] Sharon Ramsey, the Step I respondent on the 0666 grievance, indicated in response to the grievance that defendant Campbell would be "submitting the necessary approval requests to schedule" plaintiff's gel sleeve appointment. Her summary of the matter stated: "E-mail sent to PA Campbell today, 9/14/12, to determine if this request for approval Orthotic Clinic appointment has been submitted. Resolved."

---

[4]Defendants' argument with respect to these grievances is limited to the argument that they do not suffice to exhaust plaintiff's claims because they were not pursued through Step III. Defendants do not argue that they are insufficient for some other reason, such as that they do not encompass plaintiff's claims are do not properly name defendants. Because it is defendants' initial burden on summary judgment to "point out" the absence of a genuine issue of material fact, I limit my analysis to the argument made by defendants. *See Lynch v. Northeast Regional Commuter R.R. Corp.*, 700 F.3d 906, 910-11 (7th Cir. 2012) (Rule 56 "allows a court to grant summary judgment on grounds not raised by a party only after providing notice and a reasonable time to respond."); *John Deere Co. v. American Nat. Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987) (improper to grant summary judgment on ground not requested by the moving party); *cf. Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. Mar. 21, 2007) (holding that failure to exhaust "may serve as a basis for dismissal only if raised and proven by the defendants.").

Plaintiff appealed this grievance to Step II, and received Subrina Aiken's response on October 31, 2012. That response noted the steps that had been taken to return plaintiff's repaired prosthetic leg and that plaintiff had a scheduled appointment for the gel sleeve fitting. Aiken concluded: "Grievance: Resolved; Grievant to receive prosthetic. Gel sleeve fitting at DWH on 11/1/12." Aiken's response also advised that "[g]rievant is encouraged to access health care through the kite process to address any current health care concerns." Meanwhile, plaintiff had filed the 0758 grievance on October 8. Defendant Simon's October 16 response to the 0758 grievance indicated that defendant Campbell had submitted the incorrect form, but that the matter was now resolved. Defendant Simon summarized: "On 10/16/2012, item approved. Talked with Mary Foster, offsite scheduling @ DWH. She will follow up on request. Resolved." On October 19, after plaintiff had been transferred, he filed the 3378 grievance. The response to this grievance stated: "Grievant has an appointment scheduled at DWH. He was evaluated by the medical provider for the biopsy results prior to the interview of this grievance and has a follow up appointment scheduled to discuss treatment options."

   As these grievances demonstrate, each time that plaintiff grieved his medical issues, the responding MDOC official informed plaintiff of the steps that were being taken to address his concerns and that the treatment requested by plaintiff was forthcoming. In each instance, the responding official informed plaintiff that the matter was considered "resolved," and indeed in response to his Step II appeal on the 0666 grievance, Aiken informed plaintiff that any further concerns should be addressed through kites to health care, rather than through the grievance process. The MDOC grievance policy provides for an appeal to Step II if the prisoner is "dissatisfied with the Step I response" and, similarly, an appeal to Step III if the prisoner is "dissatisfied with the Step

9

II response." PD 03.02.130, ¶¶ BB, FF. Thus, plaintiff was not required to further exhaust a grievance that had been favorably resolved in order to comply with § 1997e(a). *See Manning v. Dolce*, No. 09-13840, 2010 WL 3515718, at *3 (July 12, 2010) (Randon, M.J.), *magistrate judge's report and recommendation adopted*, 2010 WL 3515715 (E.D. Mich. Sept. 8, 2010) (Rosen, J.) (citing *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005); *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004); *Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002). Here, plaintiff had every right to take the responding officials at their word that the treatment he sought was forthcoming, he could have obtained no further relief at Step II or Step III that he had not already obtained at Step I, and he had no reason to further appeal, particularly in light of Aiken's advice in her Step II response that plaintiff should pursue any further complaints by kiting health care. In these circumstances, plaintiff was not required to further appeal the favorable resolution of his grievances. *See Patterson v. Stanley*, ___ Fed. Appx. ___, 2013 WL 6044128, at *2 (5th Cir. Nov. 15, 2013); *Toomer v. BCDC*, 537 Fed. Appx. 204, 206 (4th Cir. 2013); *Davis v. Correctional Medical Servs.*, 760 F. Supp. 2d 469, 477 (D. Del.), *aff'd*, 436 Fed. Appx. 52 (3d Cir. 2011). Accordingly, the Court should deny the MDOC defendants' motion for summary judgment.

C.  *Defendant Campbell's Motion to Dismiss*

   1.  *Legal Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided for in FED. R. CIV. P. 12(b)(6). In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The

party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim. *Id*. at 47. Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47. However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*., at 557 (brackets omitted).
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common

> sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (parallel citations omitted).

2.    *Analysis*

*a. Exhaustion*

Defendant Campbell seeks dismissal on the same exhaustion grounds as raised by the MDOC defendants. For the reasons explained above, defendant Campbell's exhaustion argument is without merit, and the Court should accordingly deny defendant Campbell's motion to dismiss on this ground.

*b. Merits*

Defendant Campbell also seeks dismissal on the merits, arguing that plaintiff has failed to state a claim that she was deliberately indifferent to his serious medical needs. The Court should agree.

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *See Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). Here, plaintiff alleges that defendant Campbell was deliberately indifferent to his serious medical needs. Under the "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of

12

confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id*. at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)). Plaintiff's claims that defendant denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

Here, plaintiff's complaint fails to allege sufficient facts to establish a plausible claim that defendant Campbell was deliberately indifferent to his serious medical needs. With respect to the prosthetic and gel sleeve, plaintiff's complaint plausibly alleges that defendant Campbell did submit

a request for the gel sleeve in September 2012, but did not do so properly. Defendant Campbell did not follow up on the request, nor did she submit the correct order. The correct order was not submitted until October 16. *See* Compl., ¶¶ 12-13, 17-18, 20. These allegations fall far short of showing that defendant Campbell was deliberately indifferent to plaintiff's need for a gel sleeve. By plaintiff's own allegations, Campbell addressed the issue and attempted to order a new gel sleeve for him. Although she filled out the form improperly, and did not immediately follow-up on the matter, this is insufficient to show that she was deliberately indifferent. As the Seventh Circuit has explained, "'[d]eliberate indifference' means *recklessness* in a criminal, subjective sense: disregarding a risk of danger so substantial that knowledge of the danger can be inferred. Such disregard is tantamount to intending that the injury occur." *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 941 F.2d 344, 348 (7th Cir. 1991)) (citations omitted); *accord Farmer*, 511 U.S. at 836 (equating "deliberate indifference" to the "recklessness" standard under criminal law); *Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (negligence insufficient to establish deliberate indifference); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988) (gross negligence insufficient). Plaintiff's allegations show, at most, that defendant Campbell was negligent or grossly negligent in failing to properly fill out the order and follow up on the request. They do not plausibly show the type of subjective recklessness necessary to establish that defendant Campbell was deliberately indifferent to plaintiff's serious medical needs.

The same holds true for plaintiff's allegations relating to his prostate. With respect to defendant Campbell, plaintiff alleges that defendant arranged a prostate screening at Detroit Medical Center in September, and had a prostate biopsy done in late September. *See* Compl., ¶¶ 13-14, 16. Although not entirely clear, plaintiff's complaint appears to be that the biopsy was not done in a

14

timely manner, and that the results of the biopsy and follow-up treatment were likewise not given in a timely manner. Even if the biopsy was not done in a sufficiently timely manner (and that this resulted from defendant Campbell's actions, rather than delays necessitated by a transfer of plaintiff to an outside medical facility for the treatment), and even if follow-up treatment was delayed, plaintiff cannot establish that defendant Campbell was deliberately indifferent. She in fact arranged for the prostate screening and biopsy, and the biopsy occurred in the same month as the initial screening that recommended a biopsy. Further, any follow-up treatment for plaintiff's cancer was outside of defendant Campbell's control, once plaintiff was transferred from the Ryan Road facility, at most two weeks after the biopsy. Again, even if these allegations could suffice to show that defendant Campbell was negligent, they fall far short of showing that she was subjectively reckless–that is, deliberately indifferent.

Moreover, with respect to the prostate cancer, plaintiff's claims allege only a delay in treatment. Even assuming that plaintiff could establish that defendant Campbell was deliberately indifferent under the subjective prong of the *Farmer*, he must still show a serious medical need under the objective prong of that test by establishing"harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). As the Sixth Circuit has explained, to make this showing in cases in which, as here, "an inmate . . . complains that [a] delay in medical treatment rose to a constitutional violation," the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Here, plaintiff makes no allegations that could plausibly establish that he suffered any detrimental effect from the delay. He does not allege, with respect to

15

his prostate cancer, that he suffered any additional pain as a result of the delay, or that his condition worsened as a result of the delay in treatment. At best, his complaint alleges some fear and anxiety attending the delay, but this does not allege a plausible claim for relief. Pursuant to 42 U.S.C. § 1997e, however, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The possibility that future harm might befall plaintiff is neither itself a compensable injury, nor does it constitute "physical injury" for purposes of § 1997e(e). *See Leon v. Johnson*, 96 F. Supp. 2d 244, 248-49 (W.D.N.Y. 2000); *Zehner v. Trigg*, 952 F. Supp. 1318, 1322-23 (S.D. Ind.), *aff'd*, 133 F.3d 459, 461 (7th Cir. 1997). *See generally*, *Mason v. Schriro*, 45 F. Supp. 2d 709, 716 (W.D. Mo. 1999) (discussing cases and concluding that § 1997e(e) "is most frequently applied where the plaintiff alleges that defendant's actions have caused him to fear physical injury . . . but he fails to show any physical injury."). For these reasons, the Court should conclude that defendant Campbell is entitled to dismissal of plaintiff's claims.

D.   *Conclusion*

In view of the foregoing, the Court should conclude that there remain genuine issues of material fact with respect to whether plaintiff properly exhausted his administrative remedies. Accordingly, the Court should deny the MDOC defendants' motion for summary judgment. However, the Court should also conclude that plaintiff's complaint fails to state a plausible claim that defendant Campbell was deliberately indifferent to his serious medical needs. Accordingly, the Court should grant defendant Campbell's motion to dismiss. Finally, the Court should dismiss plaintiff's claims against defendant Gause, based on plaintiff's concession that his claims against her are unexhausted.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: February 26, 2014                    s/Paul J. Komives
                                           PAUL J. KOMIVES
                                           UNITED STATES MAGISTRATE JUDGE

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 26, 2014.

<u>s/ Kay Doaks</u>
Case Manager
